**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JEFFREY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-680-ECM |
| | ) | |
| GREG LOVELACE, Commissioner, Alabama Department of Corrections, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TERRY RAYBON, Warden, Holman Correctional Facility, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION**

Defendants respond to Plaintiff's Objections to Exhibits A and B to the Supplemental Declaration of Joseph F. Antognini, M.D. (Doc. 166). Plaintiff's objections fail for four reasons: (1) the McKenzie declarations are not hearsay because they are not offered for the truth of the matter asserted; (2) to the extent they are hearsay, multiple exceptions to the hearsay rule permit their admission; (3) they are properly before the Court as materials relied upon by Dr. Antognini in forming his expert opinions under Federal Rule of Evidence 703; and (4) the filing of Dr. Bastarache's supplemental expert declaration created an entirely new procedural context that renders any prior withdrawal of the exhibits irrelevant.

## ARGUMENT

Starting with hearsay, Exhibits A and B are not offered solely to prove the truth of every assertion contained in the McKenzie declarations, but also to also establish the basis for and materials relied on by Dr. Antognini in forming his expert opinions regarding the pulse oximeter data and the physiological effects of nitrogen hypoxia during prior executions. When an out-of-court statement is offered to demonstrate the inputs considered by an expert in reaching an opinion, it is not hearsay. The Supplemental Antognini Declaration makes clear that Dr. Antognini reviewed the McKenzie declarations as part of the body of information he considered in assessing the reliability and significance of the pulse oximeter readings from prior nitrogen hypoxia executions. To the extent they are offered to show *what Dr. Antognini considered*—rather than to independently prove the truth of Warden McKenzie's observations—the declarations are properly considered by the fact-finder. This distinction is well-established and is, indeed, one of the core purposes of Federal Rule of Evidence 703.

To the extent the McKenzie declarations are offered for any hearsay purpose, they are admissible under multiple exceptions and exclusions from the hearsay rule.

***First.*** Federal Rule of Evidence 803(5) provides a hearsay exception for a "record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness

when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." The McKenzie declarations satisfy each element.

One, the trial record demonstrates that Warden McKenzie cannot recall all details of the prior nitrogen hypoxia executions well enough to testify fully about them. Plaintiff's own objection highlights that very point: Warden McKenzie testified at trial that he never took "any notes of the pulse oximeter" during the executions and never took "any type of real-time notes during an execution by nitrogen hypoxia." (Doc. 166 at 2 n.2 (citing Doc. 147 at 200:18-23).) Plaintiff further notes that Warden McKenzie "could not recall his deposition testimony in the Boyd litigation eight months earlier." (*Id.* (citing Doc. 147 at 201:1-4).) Those statements confirm that Warden McKenzie's present recollection of the specific pulse oximeter data and the details of the execution procedures is incomplete, which inhibited him from testifying fully and accurately from memory alone—precisely the gap that Rule 803(5) is designed to fill.[1]

Two, the declarations were made or adopted by Warden McKenzie when the matters were fresh in his memory. Exhibit A, concerning the Smith execution, was executed on July 12, 2024. Exhibit B, concerning the Miller execution, was executed on October 1, 2024. While Plaintiff suggests that the six-month gap undermines the declarations' reliability, Rule 803(5) does not impose a rigid temporal requirement;

[1] And as a matter of equity, Plaintiff cannot have it both ways.

it requires only that the record was made when the matter was "fresh in the witness's memory." The declarations were prepared well within the period in which events like a judicial execution would remain clear in someone's memory, particularly when contrasted with the substantially longer interval between those events and the April 2026 trial.

Three, the declarations accurately reflect Warden McKenzie's knowledge. They were prepared in connection with federal litigation. Exhibit A was made under oath and subject to penalty of perjury, and he reaffirmed Exhibit B during direct examination in this case. (*See* Doc. 147 at 178-80.) The consistency between the declarations and Warden McKenzie's subsequent trial testimony further confirms their accuracy. (*Id.*)

***Second.*** Federal Rule of Evidence 801(d)(1)(B)(ii) provides that a prior statement by a witness is not hearsay if the declarant testifies and is subject to cross-examination about the prior statement, and the statement "is consistent with the declarant's testimony and is offered to rehabilitate the declarant's credibility when attacked on another ground." Each of these conditions is met here.

Warden McKenzie testified at trial and was subjected to cross-examination about his recollection of the Smith and Miller executions and his observations of the pulse oximeter readings for both. (*See generally* Doc. 147 at 190-206; *see also id.* at 200 ("Q: You testified during your direct examination regarding the pulse oximeter

in Mr. Smith's execution?")) During that cross-examination, Plaintiff attacked Warden McKenzie's credibility based on the absence of contemporaneous notes during the Smith and Miller executions, his inability to wholly recall deposition testimony from the *Boyd* litigation, and the purported unreliability of his observations. (*See* Doc. 166 at 2 n.2 (cataloguing these attacks); *see also* Doc. 147 at 193 ("Q: And were you being accurate…."; *id.* at 196 ("Q: And were you being truthful and accurate…."; *id.* at 200 ("Q: You didn't take any notes of the pulse oximeter during Mr. Smith's execution, did you?"); *id.* at 202 ("Q: And were you being truthful and accurate….").) The McKenzie declarations are consistent with Warden McKenzie's trial testimony regarding the pulse oximeter readings during prior executions—testimony that Plaintiff's counsel highlighted as unreliable precisely because it was based on unaided recollection.

The 2014 amendment to Rule 801(d)(1)(B) broadened the admissibility of prior consistent statements beyond the pre-fabrication-motive requirement. *See Tome v. United States*, 513 U.S. 150 (1995) (laying out prior and common law rule). Under the amended rule, a prior consistent statement is admissible to rehabilitate the declarant's credibility "when attacked on another ground," including, as here, an attack premised on the theory that the witness's memory is faulty or that his testimony is unreliable. *See* Fed. R. Evid. 801(d)(1)(B) advisory committee's note to 2014 amendment ("The intent of the amendment is to extend substantive effect to

consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory."); *see also United States v. Graham*, 123 F.4th 1197, 1252-53 (11th Cir. 2024); *United States v. Proctor*, 861 F. App'x 760, 766-67 n.5 (11th Cir. 2021) ("These attacks opened the door for the government to rehabilitate [the witness's] 'credibility as a witness.'") (quoting Fed. R. Evid. 801(d)(1)(B)(ii)).

The McKenzie declarations serve exactly this rehabilitative function. They demonstrate that Warden McKenzie's account of the pulse oximeter readings was accurate, rebutting Plaintiff's suggestion that his recollection is unreliable because he took no contemporaneous notes and could not recall certain prior deposition testimony, and are therefore admissible as non-hearsay under Rule 801(d)(1)(B)(ii). Notably, because Rule 801(d)(1) classifies these statements as "not hearsay" rather than merely excepting them from the hearsay rule, the statements are admissible as substantive evidence and not merely for rehabilitative purposes. *See* Fed. R. Evid. 801(d)(1) advisory committee's note ("The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its reception in evidence, no sound reason is apparent why it should not be received generally.").

***Third.*** The McKenzie declarations satisfy the residual exception under Federal Rule of Evidence 807, which permits the admission of hearsay that (1) "is

supported by sufficient guarantees of trustworthiness," after considering the totality of the circumstances, and (2) "is more probative on the point for which it is offered than any other evidence that the proponent can reasonably obtain." Fed. R. Evid. 807(a). The McKenzie declarations are among a severely limited universe of firsthand accounts of nitrogen hypoxia executions in the United States. They carry sufficient guarantees of trustworthiness because they were executed by a high-ranking state official with personal knowledge of the events described, prepared in connection with federal litigation, and in the case of Exhibit A, made under oath and subject to penalty of perjury. The probative value of the pulse oximeter observations they contain is substantial and, as the only documented, and most contemporaneously documented, accounts by the official overseeing the executions, they are more probative on the point for which they are offered than reasonably available alternatives, including Warden McKenzie's testimony in this case, in which he relied on those very declarations to refresh his recollection.

* * *

Plaintiff's Rule 703 argument is also flawed. Plaintiff quotes the advisory committee's note to the 2000 amendment to argue that "underlying information is not admissible simply because the opinion or inference is admitted." (Doc. 166 at 3.) But Plaintiff ignores the critical remainder of that analysis. The 2000 amendment

did not prohibit disclosure of the underlying data; rather, it established a framework for when such disclosure is appropriate. Rule 703 provides:

> If the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the trier of fact only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

That balancing test is readily satisfied here. The probative value of the McKenzie declarations in helping the Court evaluate Dr. Antognini's opinions is substantial: they contain a detailed (and by a considerable margin, the most contemporaneous) firsthand account of pulse oximeter readings during nitrogen hypoxia executions as observed by the official responsible for overseeing those procedures. Dr. Antognini's supplemental opinions regarding the reliability and interpretation of the pulse oximeter data depend on understanding the conditions under which the readings were taken, the manner in which the devices were applied, and the progression of the readings over time, all of which are described in the McKenzie declarations. And that probative value increases significantly in light of the substance of Dr. Bastarache's declaration. Specifically, she opines that "[t]he pulse oximetry data provided by ADOC includes multiple readings that are physiologically unlikely or ***impossible***." (Doc. 162-1 at 2 (emphasis added).) She offers no basis for that opinion beyond her experience with pulse oximeter devices in an entirely different setting (ICU patients suffering from critical respiratory illnesses, many of which are often intubated and pre-oxygenated) from the one at

issue here (a condemned inmate in a judicial execution). The McKenzie declarations rebut that categorical assertion, undermining the unsupported ipse dixit basis for Dr. Bastarache's opinion.

What's more, and importantly, experts in Dr. Antognini's field would reasonably rely on such materials. Rule 703 expressly permits an expert to base an opinion on facts or data that are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Medical experts routinely rely on documented observations in forming their professional opinions, and courts routinely accept opinions of those experts that do the same. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) (expert opinion may be based on "professional studies or personal experience"). Dr. Bastarache, for her part, wholeheartedly agrees. (*See, e.g.*, Doc. 146 at 129 ("A: All doctors are trained to get information from family, friends, the patient him or herself, take those observations, take those statements, and then make medical interpretations on those."); *see also United States v. Steed*, 548 F.3d 961, 976 (11th Cir. 2008) ("We have no trouble concluding that Rule 703 encompasses hearsay statements in a context such as the instant one[.]") (quotation and citation omitted)).

Moreover, this is a bench trial. The concern animating the 2000 amendment—that juries might give excessive weight to inadmissible evidence presented through an expert—has no application here. The Court is fully capable of considering the

McKenzie declarations for their proper purpose as the basis for Dr. Antognini's opinions while independently assessing their reliability and weight. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *cf. Bobo v. Tenn. Valley Auth.*, 855 F.3d 1294, 1300-01 (11th Cir. 2017) (reaffirming that evidentiary restrictions applicable to expert witnesses are "even more relaxed in a bench trial situation"). Even if there were any residual risk of prejudice, it would be far outweighed by the probative value of providing the Court with a complete understanding of the factual basis for Dr. Antognini's expert opinions.

Plaintiff's suggestion that Dr. Antognini should have relied on Warden McKenzie's trial testimony instead of the declarations is a challenge to the weight of the expert's opinion, not to the admissibility of the underlying materials. An expert is entitled to choose the materials upon which to rely; nothing in Rule 703, *Daubert*, or any place else requires an expert to prefer one source over another, and a challenge to the data or information an expert puts into an indisputably sound method go to weight instead of admissibility. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343-45 (11th Cir. 2003) (rejecting argument that allegedly flawed data alone should prevent expert's opinion from being presented to jury); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citing

favorably to *Quiet Tech* and concluding that "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact"). But in any event, Plaintiff's distinction between the McKenzie declarations and Warden McKenzie's testimony in this case is an illogical one. Here, Warden McKenzie testified about his real-time observations of the pulse oximeters during past hypoxia executions. (*See generally* Doc. 147 at 175-189.) That testimony was aided and Warden McKenzie's recollection was refreshed by the very declarations at issue here. (*See, e.g.*, *id.* at 178-184.) Dr. Antognini's choice to rely on the McKenzie declarations—detailed written accounts prepared closer in time to the events in question—reflects a reasonable decision of which facts to input to a sound methodology.

Plaintiff also devotes considerable attention to the fact that Defendants previously withdrew the McKenzie declarations as standalone exhibits during the April 23, 2026, hearing. But the procedural posture has materially changed since that withdrawal. Dr. Bastarache filed a supplemental expert declaration (Doc. 162-1) offering new opinions regarding the pulse oximeter data from prior nitrogen hypoxia executions. That filing created a new evidentiary need: Dr. Antognini was required to respond to Dr. Bastarache's supplemental opinions, and in doing so, he necessarily relied on the McKenzie declarations as part of the factual foundation for

his rebuttal analysis. The prior withdrawal of the McKenzie declarations as freestanding exhibits has no bearing on their current admissibility for a fundamentally different purpose and in a fundamentally different procedural posture. The McKenzie declarations are offered as exhibits to Dr. Antognini's supplemental declaration. This is a distinct evidentiary purpose that implicates distinct evidentiary rules. The prior withdrawal neither constitutes a concession that the declarations are inadmissible for all purposes (or even any purpose) nor operates as a waiver of the right to offer them in a different evidentiary context. *See Ohler v. United States*, 529 U.S. 753, 755 (2000) (recognizing commonsense position that evidentiary rulings are subject to reconsideration by both court and litigants as procedural posture of case evolves); *see also Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("The [*in limine*] ruling is subject to change when the case unfolds[.]").

Plaintiff's argument that "nothing in the Declaration of Dr. Julie Bastarache…called for [Dr. Antognini] to rely on the McKenzie declarations as opposed to Warden McKenzie's live testimony" (Doc. 166 at 4) improperly seeks to dictate the methodology of Defendants' expert. Dr. Bastarache's supplemental declaration offered opinions about the pulse oximeter data that Dr. Antognini and Defendants are entitled to fully address. In making his rebuttal, Dr. Antognini reasonably relied on the most detailed available accounts of the pulse oximeter observations—the McKenzie declarations, which were prepared closer in time to the

executions and contain more granular detail than the trial testimony given months or years later. The Court should evaluate the reasonableness of that reliance, not foreclose it.

## CONCLUSION

For the reasons above, this Court should overrule Plaintiff's objections and admit Exhibits A and B to the Supplemental Antognini Declaration.

Respectfully Submitted,

Steve Marshall
*Attorney General*

/s/ Brenton L. Thompson
Brenton L. Thompson
*Assistant Attorney General*
*Counsel for Respondents*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36104
Tele: (334) 353-9095

May 21, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify counsel of record.

/s/ Brenton L. Thompson
Brenton L. Thompson
*Assistant Attorney General*
*Counsel for Respondents*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36104
Tele: (334) 353-9095

May 21, 2026