# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| JEFFERY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-00680-ECM |
| | ) | |
| GREG LOVELACE, | ) | |
| Commissioner, Alabama | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO STAY INJUNCTION PENDING APPEAL

Steve Marshall
Attorney General of Alabama

Robert M. Overing
*Principal Deputy Solicitor General*

Lauren A. Simpson
*Deputy Attorney General*

Polly S. Kenny
Talmadge Butts
Brenton Thompson
*Assistant Attorneys General*

June 9, 2026                    Counsel for Defendants

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), Defendants respectfully move to stay the Court's permanent injunction pending appeal. In addition to their proposed findings of fact and conclusions of law (DE148) and the arguments in their opposition to Lee's motion on remand (DE186), Defendants offer these reasons to support a stay:

## A.    Merits

The Court found that "the firing squad produces a painless death." DE187:15. That finding is not only surprising but may be unprecedented. Even judicial opinions vigorously defending the method do not describe it as painless. *See, e.g.*, *Owens v. Stirling*, 904 S.E.2d 580, 600 (2024) (collecting opinions describing firing squad as "comparatively painless," "relatively…painless" and the like). More than once, the Supreme Court has implied that firing squad is *not* the most "humane," *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019); *Baze v. Rees*, 553 U.S. 35, 62 (2008), which is hard to square with it being completely painless.

The Court characterized Dr. Williams's opinion as "unrebutted," DE187:15, but Dr. Antognini rebutted it, even if the Court did not credit his opinion on the time to unconsciousness. Dr. Williams himself rebutted it before the Court in *Boyd*. Lee rebutted it. And even if it were unrebutted, "public policy on the death penalty…cannot be dictated by the testimony of an expert." *Baze*, 553 U.S. at 69 (Alito, J., concurring). The fact that two courts relying on substantially similar expert

testimony can reach diametrically opposed results on nitrogen hypoxia and firing squad (DE187:15 n.11) suggests there is not an "objectively intolerable risk of harm." *Baze*, 553 U.S. at 50.

Even if firing squad were painless when performed perfectly, the Court erred in discounting (or even excluding from consideration) the risks of inaccuracy. It found one in forty-six firing squad executions was "purportedly botched." DE187:5. First, that risk is relevant, it undermines the "painless" finding, and it should be compared to the alleged risk of nitrogen hypoxia. It was not the State's burden to prove that "firing squad [is] constitutionally suspect." DE187:19 (citing *Baze* and *Resweber*). The State has penological reason to resist a method that "rarely results in botched executions" when it has one that never does. DE187:19. Second, the Court's sample size incorrectly treats executions dating to 1860 as just as probative as ones today. *Contra* DE147:71-72. Of the executions conducted this century, one in four was "purportedly botched." Third, Dr. Williams conceded that two other firing-squad executions were "botched" (so three in forty-six) and did not explain why he believed the alleged "departures" from protocol involved in those should not be counted against the method. *Id.* at 71.

It was error not to compare the risk of a "botched" firing-squad execution (even if the Court thought it small) to the risk of a nitrogen-hypoxia execution. It was also error to count "one to three minutes of severe air hunger" against nitrogen

hypoxia (DE187:15) when the Court did not reach a finding in its memorandum opinion about the level of air hunger throughout a hypoxia execution.

The Court overlooked that nitrogen hypoxia cannot be unconstitutional—even as compared to firing squad on this record—because even on the analogies most favorable to Lee, the self-reports of sick hospital patients experiencing days of prolonged air hunger, the risk sounds "similar to that associated with hanging," DE176:52, which is constitutional.

If the analysis should be limited to the modern Utah protocol, rather than firing squad generally, then there has been only one execution this century using that protocol: Ronnie Lee Gardner in 2010. The last one prior to that was John Albert Taylor's execution in 1996. The State has valid penological reason to resist a method rarely used today, *Bucklew*, 587 U.S. at 142, notwithstanding its historical pedigree. Given that the Court rejected and excluded the State's arguments about the South Carolina firing-squad protocol, it should not have then credited speculative testimony from two ADOC officials about finding "capable shooters" *generally* when there was no evidence that those officials could find marksmen who meet "*Utah's* … heightened shooting requirement." DE187:18 (emphasis added).

The Court erred when it downplayed the State's concern about finding five willing and able sharpshooters to serve as executioners. Because they must supply the lethal force, their participation is materially different from "the use of volunteers

4

[that] would apply to all methods of execution." *Id.* at 17. Dr. Williams's speculation cannot override the State's concerns about these "labor supply issues," DE186:3, which are not present with other methods. The State is *justifiably* concerned that it would be easier for anti-death-penalty activists to disrupt a firing-squad execution by identifying and pressuring individual executioners than it would be to disrupt any other method because no other method depends on so many team members with such specialized training. *See id.* at 12-13 & n.5; *see also* DE148:31-32.

The fact that Lee's execution is scheduled to proceed on June 11, 2026, should have sunk his claim. Lee's alternative does not give the State a pathway "to proceed with the execution as scheduled." *Nelson v. Campbell*, 541 U.S. 637, 646 (2004). However easy or hard it would be to implement a firing squad in the abstract, there's no support for the view that it could be done *two days* from the Court's decision that it satisfies the Eighth Amendment test. In *Nelson*, for example, it was crucial that the plaintiff had proposed a "safer" and "contemporary means of venous access." *Id.* at 642. Because he argued that the challenged cut-down procedure was "*unnecessary*," the execution could "proceed" immediately without it. *Id.* at 646. Not so here. The timing also gives the State a valid penological reason to reject the firing squad as applied to Lee—it would not be able to carry out his execution as planned—even if it would lack a valid reason in the future. Lee could have pleaded

5

one of the methods authorized by state law if he were "more interested in avoiding unnecessary pain than in delaying his execution." *Bucklew*, 587 U.S. at 140.

## B.    Equities

The Court entered an equitable remedy at the eleventh hour without acknowledging the State's equitable arguments concerning delay, estoppel, or the interest in criminal law enforcement. There is no evidence in the record that the State can switch methods at this late date, likely rendering the Court's "narrow[ ]" remedy (DE187:23 n.15) a de facto stay of Lee's June 11, 2026, execution.

"Stays of executions where the conviction and sentence are valid impose a cost on the State and the family and friends of the murder victim." *Bowles v. Desantis*, 934 F.3d 1230, 1248 (11th Cir. 2019). As the Eleventh Circuit has "stated many times, '[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment.'" *Id.* (quoting *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983)) (collecting cases).

Particularly where Lee already secured a multi-year reprieve from his sentence by electing nitrogen hypoxia and has now challenged that very method on grounds that were known at the time he elected it, he should not have received equitable relief. The equities favor the State.

## CONCLUSION

The Court should stay its injunction pending appeal.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—

***Robert M. Overing***
Robert M. Overing
*Principal Deputy Solicitor General*

Lauren A. Simpson
*Deputy Attorney General*

Polly S. Kenny
Talmadge Butts
Brenton Thompson
*Assistant Attorneys General*

Counsel for Defendants

## CERTIFICATE OF SERVICE

I certify that on June 9, 2026, I served a copy of the foregoing upon counsel

for the Plaintiff by filing via the Court's CM/ECF system.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

***Robert M. Overing***
Robert M. Overing
*Principal Deputy Solicitor General*

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Robert.Overing@AlabamaAG.gov

8