**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JEFFERY LEE,<br><br>Plaintiff,<br><br>v.<br><br>GREG LOVELACE, Commissioner, Alabama Department of Corrections, *et al.*,<br><br>Defendants. | CASE NO. 2:25-cv-680 ECM<br><br>CAPITAL CASE |

**PLAINTIFF'S MOTION TO AMEND ORDER ON SCOPE
OF INJUNCTIVE RELIEF AND FINAL JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 52(b) and 59(e), Plaintiff Jeffery Lee hereby moves the Court to amend its Memorandum Opinion and Order (ECF No. 187) (the "Opinion" or "Op.") and Final Judgment (ECF No. 188) (the "Judgment") only as to the scope of the declaratory and injunctive relief. This issue did not become ripe until *after* the Court issued its Opinion and entered the Judgment, when the State moved to set an execution date for Mr. Lee using lethal injection.[1] *See* State's Expedited Renewed Mot. to Set an Execution Date, No. 1021971 (Ala. June 12, 2026) (Exhibit A).

---

[1] Because Defendants are state officials sued in their official capacities, this Motion refers to them as "the State." *See* Op. at 2 n.1.

1

**INTRODUCTION**

Following a three-day bench trial and after remand on appeal to the Eleventh Circuit, the Court held that ADOC's nitrogen hypoxia Protocol (the "Protocol") violates the Eighth Amendment:  the "Protocol presents a substantial risk of serious harm" and Mr. Lee's proposed method—execution by firing squad—is a feasible, readily implementable alternative that would "significantly reduce[] the substantial risk of serious harm posed by the Protocol."  Op. at 24 (quotation marks and citation omitted).  The Court then entered a permanent injunction enjoining the State from executing Mr. Lee under the Protocol.  *Id.* at 24–25.  The Court declined, however, to enjoin the State from using electrocution or lethal injection, because Mr. Lee had not challenged those methods in this litigation.  *Id.*  Mr. Lee respectfully submits that that would result in manifest injustice.

***First***, the State is judicially estopped from executing Mr. Lee by lethal injection.  In 2016, Mr. Lee filed suit in the Southern District of Alabama challenging the State's lethal injection protocol.  In 2018, the parties jointly agreed to dismiss that lawsuit as moot based on Mr. Lee's election to be executed by nitrogen hypoxia under the newly passed statute authorizing that method.  *See* Ala. Code § 15-18-82.1.  In granting dismissal, the court noted that "the parties jointly represent[ed] that . . . 'if [Mr. Lee] is to be executed, ***Defendants will carry out that execution by nitrogen hypoxia,*** *not the three-drug lethal injection protocol at issue in this*

2

*litigation*."  Order, *Lee v. Dunn*, No. 16-0473-WS-B (S.D. Ala. July 20, 2018) (ECF No. 38) (Exhibit B) (emphasis added).  Having secured dismissal of that action based on that representation, the State cannot reverse course.  Yet in seeking a new execution date for Mr. Lee after he prevailed in challenging the Protocol, the State now asserts that it "is prepared [ ] *to execute Lee via lethal injection with the three-drug cocktail* adopted in 2014."  Exhibit A at 3 (emphasis added).  Judicial estoppel bars the State's change in positions.

*Second*, for similar reasons, the State is equitably estopped from executing Mr. Lee by lethal injection.  Mr. Lee reasonably relied on the State's representation that his execution would be by nitrogen hypoxia, not lethal injection, and dismissed his lethal injection lawsuit as a result.  Equity forbids the State from reversing on that representation to Mr. Lee's detriment.

*Third*, Alabama's execution statute confirms that lethal injection and electrocution are not available methods to execute Mr. Lee.  Electrocution is not available because Mr. Lee did not elect that method.  *See* Ala. Code § 15-18-82.1(b)(1).  And because he timely elected nitrogen hypoxia, lethal injection is available only if nitrogen hypoxia as a method of execution—not merely the Protocol implementing it—is held unconstitutional by the Alabama Supreme Court or the U.S. Supreme Court, or by the Eleventh Circuit if certiorari is denied.  *See id.* §§ 15-18-82.1(a), (c).  None of those conditions has occurred.

Accordingly, the Court should amend its Opinion and Judgment to declare that the State is estopped from proceeding by lethal injection; to remove language suggesting that the State could, consistent with Alabama law, proceed to execute Mr. Lee by lethal injection or electrocution; and to amend its permanent injunction consistent with these conclusions.[2]

## FACTUAL BACKGROUND

## I.    The Prior Lawsuit Challenging Lethal Injection

In 2016, Mr. Lee filed a lawsuit challenging the State's three-drug lethal injection protocol under the Eighth Amendment. *See* Dkt., *Lee v. Dunn*, No. 1:16-cv-473-WS-B (S.D. Ala.). The Office of the Attorney General, including the same defense counsel here, represented the State. While the case was pending, Alabama passed legislation authorizing execution by nitrogen hypoxia and provided condemned inmates thirty (30) days to elect the method. *See* Ala. Code § 15-18-82.1. Mr. Lee timely elected nitrogen hypoxia on June 26, 2018, while expressly reserving his "right to challenge the constitutionality of any protocol adopted for carrying out executions by nitrogen hypoxia." Lee Election Form (Exhibit C).

---

[2] Mr. Lee requests a modification of the injunction to foreclose execution by lethal injection. He does not seek reconsideration of the Court's other factual findings or legal conclusions, and the State has dismissed its appeal in the Eleventh Circuit with prejudice, leaving those factual findings and legal conclusions unchallenged. *See infra* pp. 6–7 & n.4.

After Mr. Lee's election, the parties jointly moved to dismiss his lethal injection action as moot, representing to the court (hereinafter, the "Southern District") that "if he is to be executed, Defendants will carry out that execution by nitrogen hypoxia." Jt. Mot. to Dismiss ¶ 6, No. 1:16-cv-473-WS-B (S.D. Ala. July 19, 2018) (ECF No. 37) (Exhibit D). The Southern District dismissed the lawsuit based on that representation:

> The parties agree that Lee timely availed himself of that option by submitting paperwork to the Warden of Holman Correctional Facility prior to June 30, 2018, confirming his election to be executed by nitrogen hypoxia. In light of these developments, the parties jointly represent that "Plaintiff's claims and causes of action are now moot because if he is to be executed, Defendants *will carry out that execution by nitrogen hypoxia*," *not the three-drug lethal injection protocol* at issue in this litigation.

Exhibit B (emphasis added).

## II.    The Present Lawsuit Challenging the Nitrogen Hypoxia Protocol

In August 2025, Mr. Lee filed this challenge to ADOC's nitrogen hypoxia Protocol. *See* Compl. (ECF No. 1). In his "Prayer for Relief," Mr. Lee requested "an order declaring the Protocol unconstitutional . . . and enjoining Defendants [ ] from executing [him] via nitrogen hypoxia," and "an order enjoining Defendants [ ] from executing [him] using any method other than [his proposed] alternatives." *Id*.

at 27; *see also* First Am. Compl. at 23 (ECF No. 40) (same).  Mr. Lee identified execution by firing squad as that alternative.  *See* First Am. Compl. ¶¶ 70–72.[3]

Following a three-day bench trial and remand from the Eleventh Circuit, on June 9, 2026, this Court held that Mr. Lee had established an Eighth Amendment violation and permanently "enjoin[ed] the State from executing Lee pursuant to the Protocol."  Op. at 24.  The Court did not, however, enjoin the State from executing Mr. Lee by a method other than firing squad, as he had requested.  The Court explained that Alabama also authorizes "lethal injection and electrocution.  Here, Lee challenged only the ADOC's nitrogen hypoxia protocol . . . .  [H]e is not entitled to an injunction barring the State from executing him using one of those [other] methods."  *Id.* at 22–23; *see also id.* at  24–25.

The State immediately sought appellate relief, but both the Eleventh Circuit and the U.S. Supreme Court declined to stay or vacate this Court's permanent injunction.  *See* Order, *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-12027 (11th Cir. June 10, 2026) (ECF No. 17); Order, *Lovelace v. Lee*, No. 25A1381 (U.S. June 11, 2026).  On June 15, 2026, the parties stipulated to dismiss the State's appeal with prejudice.  *See* Stip. of Dismissal, *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-12027

---

[3] Mr. Lee also initially proposed medical-aid-in-dying ("MAID"), *see* First Am. Compl. ¶¶ 73–76, but dismissed that alternative before trial, *see* Stip. to Withdraw Medical-Aid-in-Dying as Alternative Execution Ground (ECF No. 98); *see also* Order (May 26, 2026) (ECF No. 172) (construing the stipulation as a motion for leave to amend and granting it).

(11th Cir. June 15, 2026) (ECF No. 19).[4]  On June 23, 2026, the Eleventh Circuit granted the stipulation and dismissed the appeal.  *See* Order, *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-12027 (11th Cir. June 23, 2026) (ECF No. 20).

### III.    The State's Renewed Motion for an Execution Date

On June 12, 2026, the State filed a renewed motion for an execution date for Mr. Lee in the Alabama Supreme Court.  *See* Exhibit A.  In that motion, the State now asserts that it "is prepared [ ] to execute Lee via lethal injection with the three-drug cocktail adopted in 2014."  *Id.* at 3.

### LEGAL STANDARD

"[T]he decision to alter or amend judgment is committed to the sound discretion of the district judge."  *Taylor v. First N. Am. Nat'l Bank*, 331 F. Supp. 2d 1354, 1355 (M.D. Ala. 2004) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)).  There are four grounds for granting a Rule 59(e) motion:  "(1) manifest errors of law or fact upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law."  *Id.*; *see also Smith v. Dunn*, 2021 WL 312617, at *1 (M.D. Ala.

---

[4] On June 12, 2026, the State contacted Mr. Lee's counsel, noting its intent to file a motion to dismiss the Eleventh Circuit appeal, agreeing that costs would be allocated against the State, and asking whether Mr. Lee would oppose the motion.  On June 15, 2026, counsel for Mr. Lee stipulated to the dismissal.

Jan. 9, 2021) (Marks, J.) (same).  Such a motion "[cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  Similarly, the purpose of a Rule 52(b) motion "is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 771 F. App'x 991, 995 n.5 (11th Cir. 2019) (quoting *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)).

These rules exist to permit a court to "rectify its own mistakes" before appellate proceedings commence.  *See White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982); *Banister v. Davis*, 590 U.S. 504, 508 (2020) (same); *see also, e.g.*, *Birdsong v. Wrotenbery*, 901 F.2d 1270, 1272 (5th Cir. 1990) (concluding that the motion to amend the scope of an injunction fell under Rule 59(e)).

## ARGUMENT

### I.   Alteration or Amendment of the Judgment Is the Appropriate Relief

This Motion satisfies the standard for relief under Rules 52(b) and 59(e).  The Court declined to enjoin the State from executing Mr. Lee by lethal injection or electrocution on the ground that he had not challenged those methods in the present lawsuit.  *See* Op. at 22–23.  Mr. Lee respectfully submits that that would result in manifest injustice, because the doctrines of judicial and equitable estoppel foreclose

8

lethal injection as to Mr. Lee and because, based on his election of nitrogen hypoxia, neither lethal injection nor electrocution is available under Alabama law.

Mr. Lee could not have raised these arguments, and the Court could not have considered them, prior to entry of the Judgment. Any challenge to lethal injection or electrocution in this lawsuit would have been unripe, because it would have "rest[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("Article III . . . limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." (citations omitted)). Alabama's statutory election scheme gave Mr. Lee no reason to anticipate that the State would disregard his election of nitrogen hypoxia and seek to execute him by a different method—until June 12, 2026, when the State sought a new execution date for Mr. Lee by lethal injection. Only then—***three days after*** this Court entered the Judgment—did a concrete controversy arise as to whether lethal injection remained available.

Because this issue could not have been raised before entry of the Judgment, Mr. Lee is not asking the Court to reconsider anything it already decided. This Motion instead asks the Court to address a new controversy that, if left unaddressed, would result in manifest injustice: Mr. Lee would face execution by a method he

specifically elected away and that the State represented he would not face. And the State would ignore the feasible alternative method—execution by firing squad—that Mr. Lee advanced and that the Court held provided a path forward under *Glossip*.

This Court has the full record, the parties before it, and the ability to determine the scope of the Opinion, Judgment, and permanent injunction before an execution date is set. Rules 52(b) and 59(e) contemplate that the rendering court—not another tribunal—will correct or clarify its judgment when necessary to prevent manifest injustice. That is particularly true here. The State has ***already*** invoked this Court's Opinion in seeking an execution date by lethal injection. *See* Exhibit A at 2. This Court should therefore clarify the scope and effect of its Opinion and Judgment before another court relies on the premise that lethal injection remains available. Because only this Court can amend its Opinion and define the scope of the equitable relief it has entered, amendment of the Opinion and Judgment is warranted.

## II.    The State Is Judicially Estopped from Executing Mr. Lee by Lethal Injection

Because the State previously represented to the Southern District that it would ***not*** execute Mr. Lee by lethal injection and ***obtained a dismissal*** of his lawsuit as a result, the State is judicially estopped from taking a different position now.

Judicial estoppel is a federal common law doctrine designed "to protect the integrity of the judicial process" by prohibiting litigants from prevailing on one position in a judicial proceeding and then taking a contrary position when

10

circumstances change.  *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (quotation marks and citations omitted); *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017) (en banc) ("[J]udicial estoppel . . . protect[s] courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment.").  Judicial estoppel applies when "(1) the party t[akes] an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions [are] 'calculated to make a mockery of the judicial system.'" *Slater*, 871 F.3d at 1181 (citation omitted).[5]  In analyzing whether a party intended to make a mockery of the judicial system, courts consider the totality of the circumstances, including the party's "level of sophistication, his explanation for the omission, whether he subsequently corrected the [inconsistent position], and any action taken by the [first] court concerning the [inconsistent position]." *Id.* at 1176–

---

[5] The Eleventh Circuit does not strictly require that the prior statement be made "under oath." *See, e.g.*, *Ward v. AMS Servicing, LLC*, 606 F. App'x 506, 510 (11th Cir. 2015) (rejecting the argument that "judicial estoppel does not apply because her prior statement was not made under oath as it was contained in a consent decree that both parties presented to the bankruptcy court for its approval"); *Slater*, 871 F.3d at 1181 (explaining that the factors are not "inflexible prerequisites"); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1368 n.12 (S.D. Fla. 2005) ("By filing pleadings, and later advocating positions consistent therewith, an attorney makes representations to the court equivalent to an oath for purposes of judicial estoppel."); *Rice v. Regions Bank*, 2010 WL 11614152, at *15 (N.D. Ala. Mar. 8, 2020) ("[T]he signing, filing, and/or submission of pleadings or other documents to the court is the practical equivalent of making a statement under oath, at least for purposes of an estoppel analysis.").

77; *see also New Hampshire*, 532 U.S. at 750–51 (considering also whether the party would derive an unfair advantage or impose an unfair detriment if not estopped). These factors support a finding of judicial estoppel here.

***First***, the State's current position—that it can execute Mr. Lee by lethal injection—is clearly inconsistent with its prior position in the Southern District.  In 2018, the State represented to the Southern District that Mr. Lee's lethal injection lawsuit should be dismissed as moot because "if he is to be executed, Defendants will carry out that execution by nitrogen hypoxia."  Exhibit D ¶ 6; *see also* Defs.' Proposed Findings of Fact & Conclusions of Law at 50–51 (ECF No. 148) ("[Lee] became subject to nitrogen hypoxia in 2018 ***when the State agreed not to execute him by lethal injection***." (emphasis added)).  The State now advances the opposite position.  In moving the Alabama Supreme Court for a new execution date, the State now represents that "ADOC is prepared . . .  to execute Lee via lethal injection." Exhibit A at 3.

***Second***, the State's inconsistent positions make a mockery of the judicial process when considering the totality of the circumstances.  The State cannot characterize its inconsistency as mistaken or a good faith response to an unforeseen event.  The State is a sophisticated litigant.  Represented by the same experienced counsel in both proceedings, the State made an unqualified commitment—not an ambiguous or passing remark, but the central premise for dismissal—that "if [Mr.

12

Lee] is to be executed, [it] will carry out that execution by nitrogen hypoxia." Exhibit D ¶ 6. That representation was *not* contingent on Mr. Lee forgoing a constitutional challenge to nitrogen hypoxia or the possibility that a court would agree with him on that challenge. In fact, Mr. Lee expressly reserved the right to challenge the nitrogen hypoxia Protocol in his election form. *See* Exhibit C. The State cannot now claim surprise at the outcome of litigation it knew it would face.

What is more, the State has never attempted to withdraw or explain its inconsistent positions. Quite the opposite, when the State invoked the dismissal of Mr. Lee's lethal injection lawsuit in its motion to the Alabama Supreme Court, the State failed to disclose the basis for that dismissal—that the State had represented it would execute Mr. Lee only by nitrogen hypoxia. *See* Exhibit A at 5. And the Southern District accepted and expressly relied on the State's representation in dismissing the lethal injection lawsuit. *See generally* Exhibit B; *see also* Exhibit D ¶ 6; *New Hampshire*, 532 U.S. at 750 ("[J]udicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" (citations omitted)). Had the State disclosed that it intended to preserve lethal injection as an available method of execution, Mr. Lee's lethal injection challenge would not have been dismissed as moot. Allowing the State to reverse course would confer precisely the sort of unfair litigation advantage that judicial estoppel is designed to prevent.

13

This Court should not permit the State to "chang[e] [its] legal position[] to suit the exigencies of the moment," *Slater*, 871 F.3d at 1176, and should therefore amend the Opinion and Judgment to bar the State from executing Mr. Lee by lethal injection.

## III. The State Is Equitably Estopped from Executing Mr. Lee by Lethal Injection

For similar reasons, the federal doctrine of equitable estoppel bars the State from executing Mr. Lee by lethal injection. Equitable estoppel applies where "(1) words, acts, conduct, or acquiescence caus[ed] another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982); *see also Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013) (similar). When a party seeks to apply equitable estoppel against the government, moreover, it must be "clear that the representations were within the scope of the agent's authority." *OPM v. Richmond*, 496 U.S. 414, 419–20 (1990); *Tefel v. Reno*, 180 F.3d 1286, 1303 (11th Cir. 1999) (requiring "some affirmative misconduct by the government"). Those elements are satisfied here.

*First*, the State represented in Mr. Lee's lethal injection litigation that, if he is executed, the State will use nitrogen hypoxia—not lethal injection. The State not only obtained dismissal of that lawsuit on the ground that lethal injection was no

14

longer at issue, but also continued to litigate this action on the same premise. The State objected to discovery about lethal injection as irrelevant, because "Plaintiff has opted not to be executed by lethal injection." Defs.' Resps. to Pl.'s 1st Set of Requests for Prod. Nos. 30 and 31 (Exhibit F).[6] Having successfully excluded lethal injection from discovery, the State cannot revive that method as a way to execute Mr. Lee.

**Second**, Mr. Lee reasonably relied on the State's prior representation in dismissing his lethal injection lawsuit. The State has acknowledged as much. In its Proposed Findings in this case, the State wrote: "It bears repeating at this point that Lee chose to die by nitrogen hypoxia. He was not required to elect the method in June 2018. Rather, ***he did so to avoid lethal injection***." Defs.' Proposed Findings of Fact & Conclusions of Law at 50 (ECF No. 148) (citations omitted). Mr. Lee testified the same: "Q. And why did you elect nitrogen hypoxia? A. Because in 2018 I was part of a lawsuit against lethal injection. So I elected nitrogen hypoxia." Lee Dep. at 23:3–9 (Def. Trial Ex. 60).[7]

---

[6] Mr. Lee requested documents related to the IV team to explore the feasibility of MAID before dismissing it as an alternative method of execution, not because he believed he would be executed by lethal injection.

[7] The reasonableness of Mr. Lee's reliance is reinforced by the fact that (1) other inmates challenging lethal injection also dismissed their lawsuits based on their election of nitrogen hypoxia and similar State representations, and (2) even today, the State has represented to other inmates that ADOC intends to proceed with their executions by nitrogen hypoxia. *See* Jt. Mot. to Dismiss ¶ 5, *In re Ala. Execution*

***Third***, the detriment here is not merely that Mr. Lee expected to be executed by a different method; he surrendered a pending federal lawsuit based on the State's representation. The State itself has recognized this loss, noting in its motion to the Alabama Supreme Court that Mr. Lee "may try to reopen his 2016 challenge to the lethal injection protocol." Exhibit A at 6.[8]  The U.S. Supreme Court has long recognized that equitable estoppel applies when a party's representations induce another to refrain from asserting legal rights. In *Glus v. Brooklyn Eastern District Terminal*, for example, the Court held that a defendant could be estopped from asserting a limitations defense where its representations caused the plaintiff to delay suit. 359 U.S. 231, 231–32, 235 (1959). If inducing a plaintiff to delay filing suit

---

*Protocol Litig.*, No. 2:12-cv-316-WKW (M.D. Ala. July 10, 2018) (ECF No. 427) (the parties jointly represented that "Plaintiffs have elected to be executed by nitrogen hypoxia, rather than lethal injection . . . . Plaintiffs' claims and causes of action are now moot because ***their executions will be carried out at the appropriate time by nitrogen hypoxia***" (emphasis added)); Email from P. Kenny to J. Lerer (June 23, 2026) (Exhibit E) (confirming that "Defendants plan to continue using the current nitrogen hypoxia protocol as to the consolidated Plaintiffs").

[8] Reopening the Southern District litigation is impractical. Had the State not represented that Mr. Lee would be executed by nitrogen hypoxia, he would have continued litigating his challenge to lethal injection, which likely would have been resolved years ago. Instead, Mr. Lee dismissed that action in reliance on the State's representation. It is neither fair nor realistic to require him to revive that litigation and challenge ADOC's lethal injection protocol on an expedited basis simply because the State has now reversed course and sought an execution date at the same time.

16

can support estoppel, as in *Glus*, then inducing a plaintiff to dismiss a lawsuit presents an even stronger case for equitable relief.

Beyond losing his opportunity to challenge lethal injection, Mr. Lee was foreclosed from developing any factual record on lethal injection in ***this*** case. The parties litigated this case on the shared understanding that lethal injection was not available, with the State successfully objecting to discovery related to lethal injection. *See, e.g.*, *supra* pp. 13–14. As a result, no expert testimony or facts were developed concerning lethal injection in this action.

***Finally***, the State's prior representation to Mr. Lee was not an inadvertent communication or a failure to act. It was a formal written commitment by counsel of record submitted to a federal court, upon which that court expressly relied in dismissing a lawsuit. The State then compounded its representation by successfully blocking lethal injection discovery in this case. That conduct goes well beyond "negligence or inaction." *United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003) (citing *Tefel*, 180 F.3d at 1302–04). The State's repudiation of its long-standing position—only after receiving an adverse Judgment—amounts to affirmative misconduct. *See, e.g.*, *Fredericks v. Comm'r*, 126 F.3d 433, 439–40 (3d Cir. 1997) ("We believe that the misrepresentations here . . . rise to affirmative misconduct . . . inducing Fredericks to sign and rely on the terms of the Form 872 on three different occasions in three different years."); *Johnson v. Williford*, 682

17

F.2d 868, 872 (9th Cir. 1982) (equitable estoppel applied against government that provided "active misadvice" about parole eligibility, because "[e]ven convicted criminals are entitled to be treated by their government in a fair and straightforward manner").

Equity does not permit these tactics, and the State should be estopped from executing Mr. Lee by lethal injection.

**IV.    Following Mr. Lee's Election of Nitrogen Hypoxia, Lethal Injection and Electrocution Are Not Available to the State Under Alabama Law**

Because Mr. Lee timely elected nitrogen hypoxia, neither lethal injection nor electrocution is a method available to the State under Alabama Code § 15-18-82.1. The Court should amend the Opinion and Judgment to remove any suggestion that the State may use these methods to execute Mr. Lee.[9]

Section 15-18-82.1(a) establishes the default rule: a death sentence "shall be executed by lethal injection, ***unless*** the person sentenced to death affirmatively elects to be executed by electrocution or nitrogen hypoxia." Ala. Code § 15-18-82.1(a) (emphasis added). Section 15-18-82.1(b) gives the inmate a one-time opportunity to make that election. With respect to electrocution, the election is

---

[9] Mr. Lee is not seeking to amend his Complaint to assert a state law cause of action or obtain prospective relief on the basis that the State has violated Alabama law. Rather, the State has placed the meaning of Alabama's execution statute at issue by asserting that lethal injection remains available notwithstanding Mr. Lee's timely election. Resolving that question is necessary to determine whether the State may evade the Court's existing injunction by substituting another execution method.

"waived unless it is personally made by the person in writing and delivered to the warden . . . within 30 days after July 1, 2002." *Id*. § 15-18-82.1(b)(1). Mr. Lee never elected to be executed by electrocution.

With respect to nitrogen hypoxia, Section 15-18-82.1(b)(2) provides that the election is "waived unless it is personally made by the person in writing and delivered to the warden . . . within 30 days of [June 1, 2018]." Mr. Lee complied with that requirement: on June 26, 2018, he submitted a written election for nitrogen hypoxia. *See* Exhibit C. Once Mr. Lee exercised that statutory right, by the plain terms of Section 15-18-82.1(a), nitrogen hypoxia became his exclusive method of execution unless a statutory exception applies. Section 15-18-82 provides that "[i]f electrocution or nitrogen hypoxia are held unconstitutional, the method of execution shall be lethal injection." But that provision does not apply here for two reasons.

***First***, this Court did not find the ***method*** of nitrogen hypoxia to be unconstitutional, as required under Section 15-18-82. Rather, the Court found the ***Protocol*** to be unconstitutional: "Lee has shown by a preponderance of the evidence that the ***Protocol*** constitutes cruel and unusual punishment in violation of the Eighth Amendment." Op. at 24 (emphasis added); *id.* (finding that "Lee has shown that the ADOC's nitrogen hypoxia execution ***protocol*** violates the Eighth Amendment," and enjoining the State from executing him "pursuant to the ***Protocol***" (emphases added)). Nothing in the Opinion holds, or could be read to hold, that the method of

19

nitrogen hypoxia itself is unconstitutional—only how ADOC has implemented it. Nor does the Court's Opinion and Judgment prevent ADOC from revising the Protocol to comply with the Constitution.[10]

*Second*, there has not been a court decision that would trigger a return to lethal injection. Section 15-18-82.1(c) expressly defines the circumstances under which an execution method is "held unconstitutional" for purposes of the execution statute: the method must be "held unconstitutional" by (1) the Alabama Supreme Court under the Alabama Constitution, (2) the U.S. Supreme Court under the federal Constitution, or (3) the Alabama Supreme Court or the Eleventh Circuit under the federal Constitution if the U.S. Supreme Court declines review.[11]  In other words,

---

[10] During a June 22, 2026 meet-and-confer in the consolidated nitrogen hypoxia cases, defense counsel represented that ADOC is planning to proceed with other nitrogen hypoxia executions *without* revising the Protocol, because "Defendants believe that the current Protocol is not unconstitutional and has only been held unconstitutional as to Jeffery Lee on the record in that case." Exhibit E.  The State, thus, is taking the position that although it cannot constitutionally use the Protocol to execute Mr. Lee, it can—consistent with the Constitution—use the same Protocol to execute other inmates.  Putting aside the merits of that position, it confirms that the State does not understand this Court's Opinion and Judgment to have held the Protocol—let alone nitrogen hypoxia as a method of execution—to be unconstitutional as a general matter.

[11] In full, Section 15-18-82.1(c) reads:  "If electrocution, nitrogen hypoxia, and lethal injection are all held to be unconstitutional by the Alabama Supreme Court under the Constitution of Alabama of 1901, or held to be unconstitutional by the United States Supreme Court under the United States Constitution, or if the United States Supreme Court declines to review any judgment holding a method of execution to be unconstitutional under the United States Constitution made by the Alabama Supreme Court or the United States Court of Appeals that has jurisdiction over

there must be a final appellate holding that the method of nitrogen hypoxia is unconstitutional. Here, neither the U.S. Supreme Court, the Alabama Supreme Court, nor the Eleventh Circuit has held the nitrogen hypoxia method to be unconstitutional, and the State eliminated any possibility of such a ruling when it voluntarily dismissed its appeal. *See supra* pp. 6–7 & n.4. Accordingly, under Alabama law, Mr. Lee's election to be executed by the nitrogen hypoxia method is controlling.[12]

Indeed, any other reading of the execution statute would produce a perverse result. Mr. Lee exercised his statutory right to elect the nitrogen hypoxia method.

---

Alabama, then all persons sentenced to death shall be executed by any constitutional method of execution based on the sole discretion of the Commissioner of the Department of Corrections." The State invoked this statutory provision in its expedited motion to set Mr. Lee's execution by lethal injection. *See* Exhibit A at 2–3.

[12] Because Sections 15-18-82 and 15-18-82.1 are adjacent provisions of the same statute, canons of statutory construction require the term "held unconstitutional" to be read consistently. *See Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1159 (11th Cir. 2021) ("We presume that words or phrases . . . bear the same meaning throughout a text, and that presumption is strengthened the more connection the cited provision has with the provision under consideration." (citation, quotation marks, and alterations omitted)); *United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022) (en banc) ("[W]e presume that identical words used in different parts of the same act are intended to have the same meaning." (quotation marks and citation omitted)). To the extent there is any ambiguity as to the meaning of "held unconstitutional" in Section 15-18-82, as a criminal statute, that ambiguity must be resolved in Mr. Lee's favor. *See United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality op.) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." (citing cases)).

21

This Court found only that ADOC's chosen Protocol for implementing that method—drafted by attorneys without consulting medical professionals—violates the Eighth Amendment.  Nothing in the statute suggests that an inmate forfeits his statutory election because the State failed to devise a constitutional means of carrying it out.  The consequence of this failure should fall on the State, not on Mr. Lee, who exercised the right that the Legislature afforded to him.

In short, Alabama's execution statute does not leave the State free to substitute another execution method merely because this Court found the current nitrogen hypoxia Protocol unconstitutional.  Mr. Lee's statutory election remains operative, and none of the Legislature's specified conditions for reverting to lethal injection has occurred.  The Court should therefore amend the Opinion and Judgment to remove any suggestion that lethal injection and electrocution are available methods to execute Mr. Lee.

## CONCLUSION

For these reasons, the Court should amend the Opinion and Judgment as follows:

1.     To declare that the State is judicially estopped from executing Mr. Lee by lethal injection, having represented to the U.S. District Court for the Southern District of Alabama that, if Mr. Lee is to be executed, "Defendants will carry out

that execution by nitrogen hypoxia," and having secured dismissal of Mr. Lee's lethal injection lawsuit on that basis;

2.      To declare that the State is equitably estopped from executing Mr. Lee by lethal injection, having induced Mr. Lee to dismiss his lethal injection lawsuit in reasonable reliance on the State's representation that it would execute him by nitrogen hypoxia, to his substantial detriment;

3.      To remove any and all language suggesting that the State may, consistent with Alabama Code § 15-18-82.1, execute Mr. Lee by lethal injection or electrocution; and

4.      To amend the permanent injunction consistent with the foregoing declarations.

Dated:  July 7, 2026                    Respectfully submitted,

/s/ Angelique A. Ciliberti
ARNOLD & PORTER KAYE SCHOLER LLP
Angelique A. Ciliberti (ASB-1504T44C)
Paige H. Sharpe (pro hac vice)
Anna K. Thompson (pro hac vice)
Kevin A. Cline (pro hac vice)
Jocelyn A. Wiesner (pro hac vice)
601 Massachusetts Ave., NW
Washington, DC 20001
T:  (202) 942-5000
Angelique.Ciliberti@arnoldporter.com
Paige.Sharpe@arnoldporter.com
Anna.Thompson@arnoldporter.com
Kevin.Cline@arnoldporter.com

Jocelyn.Wiesner@arnoldporter.com

Tommy Huynh (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
T:  (415) 471-3100
Tommy.Huynh@arnoldporter.com

Caleb Thompson (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T:  (212) 836-8000
Caleb.Thompson@arnoldporter.com

*Counsel for Plaintiff Jeffery Lee*

24

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed, via the CM/ECF system, on July 7, 2026, which will cause Defendants' counsel to receive an electronic copy.

Lauren Simpson
Polly Kenny
Brenton Thompson
Talmadge Butts
Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130

*/s/ Angelique A. Ciliberti*
Angelique A. Ciliberti