IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-680-ECM |
| | ) | [WO] |
| GREG LOVELACE, Commissioner, | ) | |
| Alabama Department of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

On June 9, 2026, following remand from the United States Court of Appeals for the Eleventh Circuit, this Court declared that the Alabama Department of Corrections' ("ADOC") nitrogen hypoxia execution protocol ("Protocol") facially violates the Eighth Amendment and permanently enjoined the State[1] from executing Plaintiff Jeffery Lee ("Lee") using the Protocol. *Lee v. Lovelace*, 2026 WL 1664095 (M.D. Ala. June 9, 2026); (docs. 187, 188).  Now pending before the Court is Lee's motion to amend pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, in which Lee requests that the Court amend the scope of the injunctive relief in its Opinion and Final Judgment. (Doc.

---

[1] Because the Defendants are state officials sued in their official capacities, this Opinion refers to them as "the State."

204).  The motion is fully briefed and ripe for review.  After careful consideration, and for the following reasons, the Court concludes that Lee's motion is due to be denied.

## II.  LEGAL STANDARDS

Under Rule 59(e), a party may seek to alter or amend a judgment only on the basis of "newly-discovered evidence or manifest errors of law or fact." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam)).  "The decision to alter or amend a judgment is committed to the sound discretion of the district court." *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006) (citing *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998)).  "A party moving the court to alter or amend its judgment pursuant to Rule 59(e) faces an extremely heavy burden." *Scharff v. Wyeth*, 2012 WL 3149248, at *1 (M.D. Ala. 2012).[2]

Rule 52(b) further provides that "the court may amend its findings—or make additional findings—and may amend the judgment accordingly."  Rule 52(b) has a "limited scope," *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 771 F. App'x 991, 995 n.5 (11th Cir. 2019) (per curiam), which is "to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence," *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986); *see also Johnson*, 771 F. App'x at 995 n.5 (citing this language from *Fontenot* with approval).

---

[2] Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

### III. BACKGROUND

The Court summarized the relevant procedural history and background in detail in its May 28, 2026 Memorandum Opinion and Order, (doc. 176), and does not repeat it here. The Court sets forth below the background relevant to resolving Lee's motion to amend.

In 2016, Lee filed suit in the United States District Court for the Southern District of Alabama challenging the ADOC's lethal injection protocol, arguing that it violated the Eighth Amendment. *Lee v. Dunn*, 2017 WL 1483530, at *1 (S.D. Ala. Apr. 24, 2017), *vacated in part by Lee v. Comm'r, Ala. Dep't of Corr.*, 731 F. App'x 885 (11th Cir. 2018) (per curiam).  In 2018, Lee elected to be executed by nitrogen hypoxia, (doc. 204-3), pursuant to the Alabama Legislature's adoption of nitrogen hypoxia as an execution method and the procedure by which an inmate may elect execution by nitrogen hypoxia, *see* ALA. CODE § 15-18-82.1.[3]  Thereafter, the parties moved to dismiss Lee's lethal injection challenge as moot. (Doc. 204-4).  The court granted the motion and dismissed the action without prejudice. (Doc. 204-2).  The court's order recounts the parties' joint representation that Lee's "'claims and causes of action are now moot because if he is to be executed, [the State] will carry out that execution by nitrogen hypoxia,' not the three-drug lethal injection protocol at issue in this litigation." (*Id.*).  Further, the court agreed that the action was moot. (*Id.*).  As explained further below, the circumstances surrounding the

---

[3] Lethal injection remains the default method of execution. *See* ALA. CODE § 15-18-82.1 ("A death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution or nitrogen hypoxia.").

dismissal of Lee's lethal injection lawsuit are a substantial basis for Lee's motion to amend the judgment.

On August 22, 2025, Lee filed a method of execution challenge to the ADOC's nitrogen hypoxia protocol, naming as Defendants John Q. Hamm ("Hamm"), then-Commissioner of the ADOC,[4] and Terry Raybon, the Warden of Holman, in their official capacities. (Doc. 1). At trial, Lee's sole claim was that the Protocol facially violates the Eighth Amendment, (doc. 40 (operative complaint)), and his proposed alternative method of execution was the firing squad, (*id.* at 20–22; *see also* doc. 98). Lee sought a declaration that the Protocol is unconstitutional and an injunction prohibiting the ADOC from executing him by nitrogen hypoxia or "any method other than one of the alternatives provided by his attorneys." (Doc. 40 at 23). As stated above, the Court declared that the Protocol facially violates the Eighth Amendment, but it did not grant the permanent injunctive relief sought by Lee. Instead, "[a]fter carefully considering traditional equitable principles," the Court permanently enjoined the State from executing him using the Protocol. *Lee*, 2026 WL 1664095, at *9. But because Lee had not established that Alabama's other statutorily authorized execution methods—lethal injection and electrocution—violate the Eighth Amendment, the Court concluded that he was not entitled to an injunction prohibiting the State from executing him using one of those methods. *Id.*

---

[4] While this case was pending, Hamm retired from his position as Commissioner of the ADOC. (*See* doc. 144 at 1). On May 1, 2026, Greg Lovelace became the Commissioner of the ADOC and was substituted as a named Defendant pursuant to Federal Rule of Civil Procedure 25(d). (*Id.*).

## IV. DISCUSSION

Lee argues that the Court should amend the scope of its injunctive relief to provide that the State is judicially and/or equitably estopped from executing him by lethal injection; and to remove any language from the Court's Opinion indicating that he may be executed by lethal injection or electrocution because, according to him, Alabama law forecloses those options for him. Lee submits that this relief is warranted pursuant to Rule 59(e) to prevent a manifest injustice.[5]

Lee first contends that the State should be estopped from executing him by lethal injection because the Southern District of Alabama dismissed his lethal injection lawsuit after the parties jointly represented that the State would execute him by nitrogen hypoxia and not by lethal injection. He further claims that when he dismissed his lethal injection lawsuit, he reasonably relied on the State's representation that it would execute him by nitrogen hypoxia, and that he will face an unfair detriment if the State is not estopped from executing him by lethal injection. Lee next argues that Alabama Code § 15-18-82.1 does

---

[5] Several district courts in the Eleventh Circuit have stated that Rule 59(e) relief is available to prevent or correct a "manifest injustice." *See, e.g., Griffith v. Toscano*, 2026 WL 1309051, at *2 (S.D. Fla. May 14, 2026); *McCall v. Mitchem*, 2012 WL 2946268, at *1 (S.D. Ala. July 19, 2012); *Jacobs v. Elec. Data Sys. Corp.*, 240 F.R.D. 595, 599 (M.D. Ala. 2007). However, the Court was unable to locate any published decisions in which the Eleventh Circuit has recognized that preventing a manifest injustice is a basis for Rule 59(e) relief. Instead, the Eleventh Circuit has stated that Rule 59(e) authorizes a court to alter or amend a judgment *only* on the basis of "newly-discovered evidence or manifest errors of law or fact." *Jacobs*, 626 F.3d at 1344 (stating that the "only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact" (alteration in original) (quoting *Arthur*, 500 F.3d at 1343)). Nonetheless, even if the Court assumes that Rule 59(e) relief is available under Lee's theory, and even if Lee had argued that Rule 59(e) relief was warranted based on a manifest error of law or on other grounds expressly recognized by the Eleventh Circuit, it would not change the Court's conclusion that he has not established entitlement to relief.

5

not permit the State to execute him by lethal injection or electrocution because his election for execution by nitrogen hypoxia is still in force, and that under Alabama law, the State therefore may only execute him by nitrogen hypoxia.  The State responds that estoppel should not apply under these circumstances; and that Lee's arguments concerning Alabama's execution statutes fail because this Court lacks the authority to instruct state officials to comply with state law, and in any event, that Alabama law permits the ADOC to execute Lee by lethal injection or electrocution.

The Court begins with Lee's estoppel arguments, which the Court addresses together, before addressing his arguments about Alabama's execution statutes.

## A.    Estoppel

Judicial estoppel is an equitable doctrine whose purpose is "'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted).  Where, as here, the party seeking to apply judicial estoppel—Lee—was a party to the prior case, the Court evaluates the propriety of estoppel based on the considerations the Supreme Court outlined in *New Hampshire*. *See United States v. Munoz*, 112 F.4th 923, 934 (11th Cir. 2024) (explaining that the Eleventh Circuit applies "the *New Hampshire* test" when "the party seeking to apply judicial estoppel . . . was a party to the prior lawsuit in which [the other party] had taken an

inconsistent position" (alterations in original) (quoting *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1182 (11th Cir. 2017) (en banc))).[6]

In determining whether to apply judicial estoppel, courts typically consider (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51 (citations omitted).  However, these factors do not amount to "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751.  Moreover, "[b]ecause the rule is intended to prevent '*improper* use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked

---

[6] When "the party seeking to invoke judicial estoppel was not a party to the [prior] case," the Eleventh Circuit applies the two-part test laid out in its *en banc* decision in *Slater*:  "the party 'took an inconsistent position under oath in a separate proceeding' and the 'inconsistent positions were calculated to make a mockery of the judicial system.'" *Munoz*, 112 F.4th at 935 (quoting *Slater*, 871 F.3d at 1181).  Although the parties analyze judicial estoppel under *Slater*'s two-part test, the Court concludes that *New Hampshire* is the appropriate analytical framework under these circumstances. *See United States v. Holland*, 117 F.4th 1352, 1360 (11th Cir. 2024) (explaining that parties "cannot waive [or forfeit] the application of the correct law or stipulate to an incorrect legal test" (alteration in original) (quoting *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023))).

Even if the Court analyzed judicial estoppel using *Slater*'s two-part test, it would not change the Court's conclusion.  Applying *Slater*'s two-part test requires courts to consider "all the facts and circumstances in determining whether the [party] acted with the intent to make a mockery of the judicial system." *Slater*, 871 F.3d at 1180.  And as stated below, the *New Hampshire* test is flexible.  Thus, any difference between the *Slater* and *New Hampshire* tests may be more apparent than real.  Further, as stated below, "judicial estoppel 'is an equitable doctrine invoked by a court at its discretion,'" *New Hampshire*, 532 U.S. at 750, and the Court in its discretion declines to apply it here.

by a court at its discretion[.]'" *Id.* at 750 (emphasis added) (citations omitted); *see also Slater*, 871 F.3d at 1180 ("[A] district court *may* apply judicial estoppel when [the applicable] test is satisfied." (emphasis added)). And "ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states." *Illinois ex rel. Gordon v. Campbell*, 329 U.S. 362, 369 (1946).[7] The Supreme Court has acknowledged that "broad interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests." *New Hampshire*, 532 U.S. at 755 (citation omitted).

Equitable estoppel is similarly "an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). Equitable estoppel comprises the following five elements:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008) (citation omitted).

---

[7] In *New Hampshire*, the Supreme Court applied judicial estoppel to the State of New Hampshire, explaining that the case was not one "where estoppel would compromise a governmental interest in enforcing the law," or where the change in position was "the result of a change in public policy" or "the result of a change in facts essential to the prior judgment"; instead, it was "a case between two States, in which each owes the other a full measure of respect." 532 U.S. at 755–56 (citation omitted).

Assuming without deciding that Lee has successfully shown that the *New Hampshire* factors counsel in favor of applying judicial estoppel or that he has satisfied the equitable estoppel elements, which the Court doubts,[8] the Court in its discretion declines to estop the State from executing Lee by lethal injection under the circumstances of this case. First, the change in the State's position is a result of a change in essential facts. *See New Hampshire*, 532 U.S. at 756. In 2018, when the State represented to the Southern District of Alabama that it would execute Lee by nitrogen hypoxia and not by lethal injection, Lee wanted to be executed by nitrogen hypoxia, as signified by his election. These facts were essential to the Southern District of Alabama's dismissal of Lee's lethal injection lawsuit as moot. When the ADOC later released its nitrogen hypoxia execution protocol, however, Lee challenged it in this Court, and he ultimately won a declaration that the Protocol is facially unconstitutional and a permanent injunction prohibiting his execution using the Protocol—the ADOC's sole protocol for carrying out nitrogen hypoxia

---

[8] Regarding judicial estoppel, for example, the Court doubts whether Lee could show that the State's position would impose an unfair detriment on him. He argues that he faces an unfair detriment because it would be "impracticable" for him to revive his lethal injection lawsuit in the Southern District. However, he does not elaborate on why it would be impracticable to do so. The Court expresses no view as to whether such a showing would be sufficient to establish an unfair detriment. But the lack of such showing underscores the Court's doubt that Lee could show he would suffer an unfair detriment.

And regarding equitable estoppel, the Court doubts Lee could show that the State misrepresented material facts—that it would execute Lee by nitrogen hypoxia and not lethal injection—or that it was aware of the true facts—that it would seek to execute Lee by lethal injection. Nothing before the Court suggests that, in June 2018, the State misrepresented that it would execute Lee by nitrogen hypoxia and not lethal injection. To the contrary, the record suggests that intervening events—Lee's subsequent challenge to the Protocol, the Court's declaration that the Protocol is unconstitutional, and the Court's permanent injunction prohibiting the State from executing Lee using the Protocol—have caused the State's later actions to deviate from its prior intentions.

executions.  It was only after these developments that the State decided to pursue Lee's execution by lethal injection.  Under these circumstances, the change in the State's position is attributable to a change in essential facts and does not amount to an "improper use of the judicial machinery," *see New Hampshire*, 532 U.S. at 750 (citation omitted), thereby counseling against the application of estoppel.

This case's procedural posture also informs the Court's discretionary decision not to apply estoppel.  Lee invokes equitable doctrines as grounds for modification of the Court's permanent injunction, which is itself an equitable remedy.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  But Lee's interests are not the only interests at stake here.  "[E]quity must [also] be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (stating this proposition in the context of a request for a stay of execution); *see also eBay Inc.*, 547 U.S. at 391 (explaining that a plaintiff seeking a permanent injunction must show (1) irreparable injury; (2) that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) that an equitable remedy is warranted "considering the balance of hardships between the plaintiff and defendant[s]"; and (4) that "the public interest would not be disserved by a permanent injunction"); *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (same).  The victims of Lee's crimes also have "an important interest in the timely enforcement of [his] sentence." *See Hill*, 547 U.S. at 584.

Here, Lee sought a permanent injunction prohibiting the ADOC from executing him by nitrogen hypoxia or "any method other than one of the alternatives provided by his attorneys," (doc. 40 at 23), which functionally was a request that he not be executed "by any method other than firing squad," (*see* doc. 185 at 1). After balancing the hardships between Lee and the State and considering the public interest, however, the Court concluded that a narrow permanent injunction prohibiting the State from executing Lee using the nitrogen hypoxia protocol was appropriate. *Lee*, 2026 WL 1664095, at *9. As the Court explained, this permanent injunction was narrowly tailored to remedy the specific harm at issue: that the Protocol violates the Eighth Amendment. *Id.* at *9 n.15. Moreover, the injunction entered by the Court would not further delay the State in carrying out Lee's lawfully imposed death sentence.

The need to avoid further delay is particularly salient here given Lee's litigation history. While his lethal injection lawsuit was pending, Lee elected execution by nitrogen hypoxia as provided by Alabama statute. Because the ADOC did not at that time have a nitrogen hypoxia protocol, Lee's election had the practical effect of delaying his execution until such protocol was adopted. In this challenge to the ADOC's nitrogen hypoxia protocol, Lee's proposed alternative method of execution was the firing squad, and he requested a permanent injunction prohibiting his execution by any means other than the firing squad. If the Court had granted his request, it would have had the practical effect of further delaying his execution because the ADOC is not currently prepared to use the firing

11

squad.[9]  Now that the State has announced its intention to execute him by lethal injection, Lee claims that the State can only execute him by nitrogen hypoxia, just not using the existing protocol.  If Lee were correct, it would also have the practical effect of delaying his execution because the ADOC would need time to develop a new nitrogen hypoxia protocol.  Considering the totality of the circumstances, including the circumstances of the dismissal of Lee's lethal injection challenge, equity does not demand that the Court prohibit the State from executing Lee by lethal injection, the State's default execution method and one which it is presently able to use.  For these reasons, the Court in its discretion declines to apply judicial estoppel.

To be sure, Lee successfully established that the ADOC's nitrogen hypoxia protocol is facially unconstitutional, and a permanent injunction prohibiting his execution using the unconstitutional Protocol was and remains appropriate.  But balancing all of the equities, including the State's and the victims' interests in the enforcement of Lee's sentence, the broader, modified injunction Lee now seeks is not warranted.  Consequently, the Court concludes that Lee has not established entitlement to amendment of the Court's injunction under Rules 52(b) or 59(e) on the basis of estoppel.

---

[9] The Court reiterates that, for the reasons explained in further detail in its June 9 Opinion, firing squad is feasible and readily implemented notwithstanding this delay. *See Lee*, 2026 WL 1664095, at *5.

**B.**    **Whether Alabama Code § 15-18-82.1 Prohibits Lee's Execution by Lethal Injection or Electrocution**

Lee further argues that, because he timely elected execution by nitrogen hypoxia pursuant to Alabama Code § 15-18-82.1, Alabama law prohibits the State from executing him by lethal injection or electrocution.  He thus requests that the Court remove from its Opinion "any and all language suggesting that the State may, consistent with Alabama Code § 15-18-82.1, execute [him] by lethal injection or electrocution." (Doc. 204 at 23, para. 3).  The State counters that this ground for relief is barred pursuant to *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).  The Court agrees with the State.

The Eleventh Amendment prohibits suits against a state, including those brought by a state's own citizens. *Pennhurst*, 465 U.S. at 97–99.  The Supreme Court has explained that "the principle of sovereign immunity" embodied in the Eleventh Amendment, which is rooted in principles of federalism and state sovereignty, "is a constitutional limitation on the federal judicial power established in" Article III. *Id.* at 98.  But notwithstanding a state's sovereign immunity, a suit for declaratory or injunctive relief against a state official may be permitted under *Ex parte Young*, 209 U.S. 123 (1908), where the court is asked to instruct a state official to comply with federal law, because requiring compliance with federal law is not offensive to state sovereignty or federalism. *See id.* at 160 ("The State has no power to impart to [state officials] any immunity from responsibility to the supreme authority of the United States.").  On the other hand, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to

conform their conduct to state law." *Pennhurst*, 465 U.S. at 106 ("A federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of federal law."). To that end, "federal courts do not have the authority to compel state actors to comply with state law." *Doe v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001); *see also Pennhurst*, 465 U.S. at 106, 121. This rule applies equally to a request for a declaration that state officials' conduct violates state law. *See Leeds v. Bd. of Dental Exam'rs of Ala.*, 382 F. Supp. 3d 1214, 1230 (N.D. Ala. 2019), *vacated in part on other grounds*, 2019 WL 1696845 (N.D. Ala. Apr. 17, 2019); *see also Silver v. Baggiano*, 804 F.2d 1211, 1213–15 (11th Cir. 1986) (in suit against state official seeking both declaratory and injunctive relief for violations of state law, concluding that all claims based on state law were barred by the Eleventh Amendment), *abrogated in part on other grounds*, *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002).

As stated above, Lee asks the Court to remove from its Opinion "any and all language suggesting that the State may, *consistent with Alabama Code § 15-18-82.1*, execute [him] by lethal injection or electrocution." (Doc. 204 at 23, para. 3 (emphasis added)).[10] The premise of Lee's argument is that, because he elected nitrogen hypoxia, neither lethal injection nor electrocution is an available execution method under Alabama law. He plainly does not request relief on the basis that executing him by lethal injection or electrocution would violate *federal* law. Instead, he requests relief pursuant to state law

---

[10] For purposes of this analysis, the Court need not, and does not, determine whether Lee's interpretation of state law is correct. *See Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 252 (1985) ("The Eleventh Amendment bar does not vary with the merits of the claims pressed against the State.").

because, according to him, state law requires it.  Granting Lee the relief he seeks would, in substance, require this Court to determine that the State's actions violate state law and to order the State to comply with state law, which the Court lacks the authority to do. *See Doe*, 261 F.3d at 1055; *Silver*, 804 F.2d at 1213–15.  It does not matter that Lee neither brings a formal claim for a violation of Alabama Code § 15-18-82.1 nor formally seeks an injunction for the State to comply with state law; his "requested relief is disguised . . . to achieve that aim." *See Ford v. Strange*, 2013 WL 6804193, at *8 (M.D. Ala. Dec. 23, 2013); *cf. Brown v. Ga. Dep't of Rev.*, 881 F.2d 1018, 1023 (11th Cir. 1989) ("Under *Pennhurst*, . . . the determinative question is not the relief ordered, but whether the relief was ordered pursuant to state or federal law.").  The "gravamen" of his requested relief is that the State "has improperly interpreted and failed to adhere to a state statute governing" execution methods, *see DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997) (per curiam), and the Eleventh Amendment plainly bars such relief.  For these reasons, Lee's arguments concerning Alabama Code § 15-18-82.1 do not supply grounds for amending the Court's injunction under Rules 52(b) or 59(e).  Consequently, the Court concludes that Lee's motion to amend is due to be denied.

## V. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED that Lee's motion to amend (doc. 204) is DENIED.

DONE this 22nd day of July, 2026.

                                           /s/ Emily C. Marks
                                   EMILY C. MARKS
                                   UNITED STATES DISTRICT JUDGE