IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-680-ECM |
| | ) | |
| GREG LOVELACE, Commissioner, | ) | |
| Alabama Department of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

This matter is before the Court on an Order requiring the State[1] to show cause why John Q. Hamm; Terry Raybon; Charles "Chuck" Williams, the State's Rule 30(b)(6) designee; and Attorney Brenton L. Thompson of the Alabama Attorney General's Office should not be sanctioned pursuant to Rule 26(g)(3) of the Federal Rules of Civil Procedure, based on the State's response to a Request for Admission ("RFA #86") propounded by Plaintiff Jeffery Lee ("Lee"). (Doc. 139).[2] In response to RFA #86, the State denied that the pulse oximeters that the ADOC uses during a nitrogen hypoxia execution retain

[1] Because the Defendants are state officials sued in their official capacities, the Court refers to them as "the State."

[2] When the State responded to RFA #86, the Defendants in this case were John Q. Hamm ("Hamm"), then-Commissioner of the Alabama Department of Corrections ("ADOC"); and Terry Raybon, Warden of Holman Correctional Facility. Hamm subsequently retired, and pursuant to Rule 25(d), Greg Lovelace was substituted as Commissioner of the ADOC. (Doc. 144).

metadata. (*See* doc. 119-3 at 22). The State argues that sanctions should not be imposed. (Doc. 197). After careful consideration of the State's response, the applicable law, and the entire record, the Court concludes that sanctions are not warranted.

## II. LEGAL STANDARD

Rule 36, which governs requests for admission, states in relevant part that "[a] denial must fairly respond to the substance of the matter." FED. R. CIV. P. 36(a)(4). Additionally, "an attorney or party" who signs a discovery response "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: with respect to a discovery request, response, or objection, it is . . . neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." FED. R. CIV. P. 26(g)(1); *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997) ("This signature certifies that the filing conforms to the discovery rules, is made for a proper purpose, and does not impose undue burdens on the opposing party in light of the circumstances of the case."); *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009) (per curiam) ("Rule 26(g) requires an attorney to sign every discovery response asserting, *inter alia*, that the response is complete and correct . . . ." (italics in original)).[3] "If a certification violates this rule without substantial justification, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on

[3] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges these cases are nonprecedential, the Court finds them persuasive.

whose behalf the signer was acting, or both." FED. R. CIV. P. 26(g)(3) (emphasis added); *see also Chudasama*, 123 F.3d at 1372 ("The decision whether to impose sanctions under Rule 26(g)(3) is not discretionary."). Generally, statements by a government agency's Rule 30(b)(6) designee "are binding on a [government agency] because the [agency], by making the designation, 'represents that the employee has authority to speak on behalf of the agency.'" *See Cent. Baptist Church of Albany Ga., Inc. v. Church Mut. Ins. Co.*, 2022 WL 1076076, at *9 n.6 (M.D. Ga. Feb. 25, 2022) (stating this proposition in context of Rule 30(b)(6) deposition).

## III. DISCUSSION

On or about February 20, 2026, Lee propounded his Third Set of Requests for Admission on the State, (doc. 201-1), including RFA #86, which requested that the State "[a]dmit that the pulse oximeters that ADOC uses during a nitrogen hypoxia execution retain metadata," (*id.* at 7).[4] On March 2, 2026, the State denied that the pulse oximeters that the ADOC uses during a nitrogen hypoxia execution retain metadata. (*See* doc. 119-3 at 22). The Court indicated in its show cause order that it appeared that the State's response was false when it was made and that the State knew it was false because, as counsel for the State acknowledged at the April 23, 2026 pretrial conference, the State knew, on February 25, 2026, that the pulse oximeters retained residual data. (*See* doc. 139 at 1). RFA #86 was

[4] Lee's Third Set of Requests for Admission does not contain a definition of metadata. (*See* doc. 201-1 at 1–4 (Definitions section)).

signed by Chuck Williams before a Notary Public; and by Attorney Thompson, an attorney of record for the State.[5]

In its response to the Court's show cause order, the State proffers two primary arguments why sanctions should not be imposed. The first argument turns on a distinction between data and metadata. Specifically, the State contends that its response to RFA #86 was accurate when made because there is no evidence that the pulse oximeters retain *metadata*, as opposed to data more generally. Second, the State argues that, even if RFA #86 is construed as asking about data more generally, the State conducted a reasonable inquiry before responding and had "substantial justification" for its response.

Upon review, the Court finds that the State fairly responded to the substance of RFA #86 when it denied that the pulse oximeters retain metadata, and that its response was accurate when made. Michael Wales ("Wales"), the IT specialist at the Attorney General's Office, avers that "[o]rdinary data is the main content of the file," whereas metadata "is hidden data that describes a file." (Doc. 197-4 at 3, para. 11). Put another way, metadata is "data that provides information about other data." *Metadata*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/metadata (last visited Oct. 6, 2026). "Metadata can be categorized as, for example, descriptive (e.g., file title, author,

[5] As the Court explained in its show cause order, (*see* doc. 139 at 2 n.2), although Attorney Thompson purported to sign the RFAs only as to objections, such limitation would constitute an improper certification under Rule 26(g). Rule 26(g)(1) provides that "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--*or by the party personally, if unrepresented*." (emphasis added); *see also Chudasama*, 123 F.3d at 1372 (stating that Rule 26(g) "requires that discovery-related filings bear the signature of an attorney of record"). On March 2, 2026, the Defendants were not unrepresented.

keywords), structural (e.g., the links among subpages on a website), administrative (e.g., information on data ownership, permissions, and retention), technical (e.g., file type, storage location, file size), or preservation (e.g., information about a data set's last backup)." (Doc. 197 at 24–25 (parentheticals in original) (citing *What Is Metadata?*, IBM, https://www.ibm.com/think/topics/metadata) (hereinafter "*What is Metadata?*")). Thus, a material distinction exists between data and metadata, which is "data about data," *see What is Metadata?* The Court does not discern any evidence in the record which would support a finding that, on March 2, 2026, the State knew or should have known that the pulse oximeters retained *metadata*; and the State submits that no metadata for the pulse oximeters has been located, (*see id.* at 25; doc. 197-4 at 3, para. 12; doc. 197-1 at 7, paras. 25–26). For these reasons, the Court finds that the State fairly responded to the substance of RFA #86, and the State's denial that the pulse oximeters retain metadata was accurate at the time.[6] Consequently, the Court concludes that the State's response to RFA #86 did not violate the discovery rules, and Rule 26(g)(3) sanctions are not warranted.

## IV. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED that the State's obligation to show cause why sanctions should not be imposed is DISCHARGED.

[6] The Court pretermits discussion of whether, construing RFA #86 as a request about data more generally, the State conducted a reasonable inquiry before responding or had substantial justification for its response.

DONE this 6th day of October, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE